IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
(FT. MYERS DIVISION)

GEORGE CELANI

    Plaintiff

-VS-                                         CASE NO.:

CHECK MART OF FLORIDA, INC d/b/a
THE CHECK CASHING STORE,

    Defendant
_____/

## COMPLAINT

1. Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## JURISDICTION AND VENUE

2. This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and cost.

3. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §§1331 and 1337. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012)

4. The alleged violations described in the Complaint occurred in Sarasota County, Florida.

## FACTUAL ALLEGATIONS

5. Plaintiff is a natural person, and citizen of the State of Florida, residing in Sarasota County, Florida

6. Plaintiff is a "consumer" as defined in Florida Statute §559.55(2).

7. Plaintiff is an "alleged debtor."

1

8. Plaintiff is the "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

9. Defendant is a corporation and a citizen of the State of Florida with its principal place of business at 2731 Executive Park Drive, Weston, FL, 33331.

10. Defendant is a "creditor" as defined by Florida Statute §559.55(3).

11. Defendant sought to collect from Plaintiff an alleged debt arising from transactions incurred primarily for personal, family, or household purposes and therefore is a "consumer debt" as defined in Florida Statute §559.55(1).

12. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

13. On information and belief, the telephone calls were placed using automated telephone dialing equipment, without human intervention.

14. Each call the Defendant made to the Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

15. Each call the Defendant made to the Plaintiff's cellular phone was done so without the "express permission" of the Plaintiff.

16. In or about the beginning of February, 2013, Plaintiff received a telephone call to his cellular telephone, number (941) 615-7800, from the Defendant in an attempt to collect a debt of $500 for a personal cash loan.

17. In or about February 2013, Plaintiff answered a telephone call to his cellular telephone, from the Defendant, and informed the Defendant he did not want to be contacted by telephone.

18.     Despite actual knowledge Plaintiff did not wish to be contacted on his cellular telephone, the Defendant continued the campaign of calls.

19.     In or about February 2013, Plaintiff answered a call to his cellular telephone, from the Defendant and was threatened by an agent or representative of the Defendant that if Plaintiff "did not pay" they "will take action."

20.     From February 2013 through April 2013, Plaintiff answered several additional telephone calls to his cellular telephone, from the Defendant, and repeatedly informed the Defendant he did not want to be contacted on his cell phone.

21.     On or about March 14th, 2013, Plaintiff sent a facsimile requesting Defendant to "Please stop calling my cell phone- make all communications by mail." (See attached Exhibit "A").

22.     Plaintiff formally revoked, in writing, any prior consent Defendant had, or believed to have had, to contact Plaintiff on his cellular telephone, using a robo-dialer.

23.     On or about March 26th, 2013, Plaintiff, again, wrote to the Defendant, indicating that all communication should be in writing, with no further calls to his cellular phone. (See attached Exhibits "B-1" & "B-2").

24.     Plaintiff's written request was received by the Defendant on April 5th, 2013. (See attached Exhibits "B-2")

25.     The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer to stop the cell phone calls.

26.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse.

27. Plaintiff received approximately six hundred (600) calls from Defendant from February 2013 through April 2013 that were made without Plaintiff's express permission and are continuing through the filing of this complaint. (See attached Composite Exhibit "C").

28. Defendant's corporate policies and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals requesting to the Defendant to cease cellular telephone communications.

29. Defendant's corporate policies and procedures provided no means for the Plaintiff to have his number removed from the call list.

30. Defendant has many similar complaints from non-debtors across the country, as those alleged in this lawsuit, by Plaintiff.

31. Plaintiff did not expressly consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice prior to Defendant's placement of the calls.

32. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

33. Defendant repeatedly, willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

34. Plaintiff incorporates Paragraphs one (1) through thirty-three (33).

35. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

4

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

36. Plaintiff incorporates Paragraphs one (1) through thirty-three (33).

37. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

38. Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

39. Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

40. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Amanda J. Allen

Amanda J. Allen, Esquire
Florida Bar #: 0098228
William Peerce Howard, Esquire
Florida Bar #: 0103330
**Morgan & Morgan, Tampa, P.A.**
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
aallen@forthepeople.com
bhoward@forthepeople.com
*Attorneys for Plaintiff*